FILED
2014 Mar-28 AM 09:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **TERRY KEITH PENNINGTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CASE NO. 3:12-CV-4191-SLB |
| | ) |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Terry Keith Pennington brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying his application for a period of disability, disability insurance benefits ["DIB"], and supplemental security income ["SSI"]. (Doc. 9.)[1] Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be reversed and the case is due to be remanded for further proceedings consistent with this Memorandum Opinion.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

# I. **PROCEDURAL HISTORY**

Mr. Pennington initially filed an application for benefits on October 29, 2009, (r. 106),[2] alleging a disability onset date of April 18, 2009 due to back problems, bulging disk, deteriorating disk, arthritis in back, peripheral artery disease, high cholesterol, high blood pressure, and an inability to walk very far, (r. 156). After the Social Security Administration ["SSA"] denied his application, he requested a hearing before an Administrative Law Judge ["ALJ"], which was held on February 22, 2011, (r. 25.)  After the hearing, the ALJ found that plaintiff did not have an impairment or a combination or impairments listed in, or medically equivalent to one listed in, the Listings of Impairments. (R. 29); *see* 20 C.F.R. § 404.1520(d). The ALJ also found that plaintiff retained the residual functional capacity to perform light work with some exceptions, (r. 29), and that he was able to perform his past relevant work, (r. 32). In light of these findings, the ALJ denied plaintiff's request for a period of disability, SSI, and DIB on April 8, 2011. (R. 32.)

Plaintiff then requested the Appeals Council to review the ALJ's decision. (R. 1.) The Appeals Council found no reason under its rules to review the ALJ's decision, and it denied his request for review. (*Id*.) Therefore, the ALJ's decision is the final decision of the Commissioner. (*Id*.)

---

[2] Reference to a record number, ["R.___"], refers to the page number in the bound physical copy of the transcript of the entire record of the proceedings.

Following denial of review by the Appeals Council, plaintiff filed an appeal in this court. (Doc. 1.) He requests that this court reverse the Commissioner's decision or, in the alternative, remand the case for further consideration. (Doc. 9 at 12.)

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

The court reviews the Commissioner's conclusions of law de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

**A.  THE FIVE-STEP EVALUATION**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, SSI, and/or DIB. *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB] if [he] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(1); *see also* § 416(i)(1); § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

**1.  Substantial Gainful Employment**

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[3] If the claimant

---

[3] 20 C.F.R. § 404.1572 and § 416.972 define "substantial gainful activity":
(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

4

is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4]

The ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. 27.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

---

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that he has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the following severe impairments: "history of peripheral vascular disease with popliteal artery bypass surgery, hypertension, mild spinal scoliosis and mild degenerative changes in the spine, and tobacco abuse with mild chronic obstructive pulmonary disease (COPD)." (R. 27.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); § 416.920(d). The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (R. 29.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that his impairment prevents her from performing his past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commission's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work. 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done

within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally pushing/pulling with the lower extremities. He can occasionally climb ramps and stairs, but no climbing of ropes, ladders, or scaffolding. He can occasionally stoop, crouch, and crawl. The claimant should avoid concentrated exposure to cold, heat, and vibrations. He should avoid exposure to hazardous machinery and no work around dangerous, unguarded machinery, or unrestricted heights." (R. 29.) Considering this RFC and testimony of a vocational expert, the ALJ found that plaintiff could perform his past relevant work as a screen print operator and floor supervisor "as [they are] actually and generally performed." (R. 32.)

## B. MR. PENNINGTON'S CLAIM

Plaintiff has two bases for his appeal. First, plaintiff argues that "the ALJ improperly discredited plaintiff's testimony based on his daily activities." (Doc. 9 at 7.) Second, plaintiff argues that "the ALJ failed to properly consider plaintiff's impairments in combination." (*Id.* at 8.) Because the court finds plaintiff's first argument persuasive and because the ALJ did

not rely on substantial evidence in assigning plaintiff an RFC, this case is due to be reversed and remanded.

Defendant argues that plaintiff "ignores that the regulations and case law in this Circuit permit an ALJ to consider a claimant's daily activities when evaluating his subjective complaints," (doc. 10 at 7-8), but that oversimplifies plaintiff's brief. Plaintiff is not arguing that an ALJ can never consider a claimant's daily activities, which would contradict the directive in SSR 96-7p that "the adjudicator must consider . . . 1. The individual's daily activities." *See also* 20 C.F.R. 416.929(c)(3)(i)-(vii); 404.1529(c)(3)(i)-(vii). Rather, plaintiff is arguing that his meager daily activities "do not demonstrate that Plaintiff is capable of work activity." (Doc. 9 at 7.)

The ALJ characterized plaintiff's daily activities in the following manner: "The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations . . . : shopping, cooking, driving, doing laundry, and attending to personal needs." (R. 31.) Such a generalized list could mean almost anything. The ALJ might as well have said, "the claimant can transport himself and perform the most basic necessities of life." But many people, though they endure great or even disabling pain, are able to live on their own.

To truly evaluate whether plaintiff's daily activities "are not limited to the extent one would expect," more than merely the categories of plaintiff's activities is needed. The evidence in the record of plaintiff's "shopping" is this: he shops every two weeks for food,

for twenty minutes. (R. 150.) Every two to three years he shops for clothes, for thirty minutes. (*Id*.) In other words, according to the evidence on which the ALJ could rely, plaintiff spends about eight and a half hours actually shopping *per year*. It is difficult to imagine that shopping could be any more limited without being completely nonexistent. The evidence of plaintiff's "cooking" is this: he "usually just make[s] sandwiches" or TV dinners, (r. 50), and he prepares meals every other day, (r. 149). The evidence of plaintiff's "driving" is this: he responded yes when the ALJ asked, "[Y]ou do drive some, at least, right?" (R. 41, 150.) The evidence of plaintiff's "doing laundry" is this: he does a few shirts and a few pants, and his mom helps sometimes. (R. 50, 149.) There is no evidence of what he does to attend to his personal needs, only the box he checked that says that he has no problem doing so. (R. 148.)

The most complete picture of plaintiff's daily activities is this: he spends a majority of what might otherwise be his workday watching about five hours of television. (R. 151.) As the ALJ acknowledged, (r. 29), plaintiff testified that he spends six hours lying down between eight o'clock and five o'clock, (r. 46).

Plaintiff was right to question the ALJ's suggestion about his daily activities. It is reasonable to ask: how much more limited would one expect these activities to be in order to be consistent with plaintiff's complaints of disabling limitations and symptoms? Generic daily activities such as "shopping" and "cooking" are not activities that an ALJ can simply list to discredit a claimant's testimony of pain. *See Kahle v. Comm'r of Soc. Sec.*, 845 F.

Supp. 2d 1262, 1272-73 (M.D. Fla. 2012). They must be activities actually inconsistent with what the claimant alleges. Plaintiff's testimony with regard to his daily activities is consistent with his complaints of disabling symptoms and limitations.

The ALJ did not rely on plaintiff's daily activities alone, however, to discredit his complaints. If the court can identify other substantial evidence on which the ALJ relied in assigning plaintiff an RFC, the court must affirm.

The ALJ also "emphasized that the claimant complained of pain at a 6 level at the hearing" and that the VE "testified that pain of a 7 or greater would interfere with the ability to perform work." (R. 31.) First of all, the underlying assumption of that observation is unsound. The scale of one to ten presented to plaintiff at the hearing was this: "One is very little pain. Ten you're in the emergency room." (R. 45.) It is unfair to assume that plaintiff could calibrate, based on that scale, the numerical value of his pain to within a single point, and then to hold that value up against an expert's opinion that only pain of a *single point* higher would "interfere with the ability to perform work."[5] Second, and more importantly, that observation is false. Plaintiff testified that half of the days his pain level is a six, and half of them it is an eight or nine. (R. 45-46.) In other words, every other day his alleged pain would "preclude gainful employment." (R. 56.)

---

[5]Those are the ALJ's words, not the VE's. The VE said, "Pain that would persist at levels of intensity of moderately severe or greater . . . a seven . . . [would] *preclude*[] gainful employment." (R. 56) (emphasis added). The VE never said at which numerical value pain would begin to *interfere* with the claimant's ability to work.

11

The ALJ "emphasized that the last impatient [sic] records associated with the lower extremities is dated June 29, 2009." (R. 30.) That is true, but four outpatient records since then address plaintiff's pain in his legs, including one from a month before the hearing.[6] The ALJ relies on this last report elsewhere, characterizing it as showing that "claimant was treated basically for complaints of hypertension." (R. 30.) "Basically" implies that there was some other minor complaint, perhaps unrelated to the reason for the visit, but the word is actually covering up another *primary* reason for the visit: "[Plaintiff] presents today for follow-up evaluation of back pain. He also presents for follow-up evaluation of hypertension." (R. 270.) As for ongoing treatment since June 2009, plaintiff's prescription for two tablets of Ultram "every six hours as needed" was active on his latest visit. (R. 271.) Ultram, the brand name for tramadol, is strong medicine: "Tramadol is used to relieve moderate to moderately severe pain. . . . Tramadol is in a class of medications called opiate agonists." *Tramadol*, MEDLINEPLUS: A SERVICE OF THE NAT'L INST. OF HEALTH, (Oct. 9, 2013), http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html.

Additionally, the ALJ relied on several other inconsistencies: the ALJ noted that plaintiff's surgery was successful and that records do not show complaints similar to the ones plaintiff made pre-surgery in his subsequent visits to doctors. (R. 30.) Whether that is true or not is not determinative, since "history of peripheral vascular disease" was only one of plaintiff's severe impairments.

---

[6]*See* note seven, *infra*.

The ALJ also noted that plaintiff testified at the hearing to only seeing his treating physician "every 5 to 6 months." (R. 30.) Not only is that an incorrect statement of plaintiff's testimony, (r. 56-57) ("ALJ: About every four or five months? Is that how often you see Dr. Stanley[;] CLMT: Yeah."), but the most recent treatment records show that plaintiff visited his treating physician four times in the nine months preceding the hearing, (r. 262-271). The ALJ noted that the most restrictive medical limitations given by a treating physician were "no heavy lifting or driving." (R. 30-31) (citing r. 235). But those limitations must be considered in conjunction with the following paragraph.

The ALJ found "little support for any major back problems. . . . X-rays show nothing more than some mild scoliosis and mild degenerative changes." (R. 30.) That statement suggests that the objective medical evidence could not reasonably support the alleged severity of the plaintiff's symptoms. But once the ALJ finds, as he did in this case, that the "claimant's medically determinable impairments could reasonably be expected to cause symptoms," (r. 30), even if the objective medical evidence would not substantiate the "intensity, persistence, or functionally limiting effects of pain," the ALJ "must make a finding on the credibility of the individual's statements . . . ." SSR 96-7p (introduction). "*[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence*." *Id.* ("Medical Evidence") (emphasis in original). The ALJ has not articulated a valid reason to

discredit plaintiff's testimony. In fact, the reports from plaintiff's treating physician consistently note back pain radiating down his legs.[7]

The ALJ rejected the opinion of the SSA's own consulting physician, Dr. Evans, because the ALJ found "it to be inconsistent with the record as a whole" and because it "is based solely on a one timed [sic] examination." (R. 31.) Dr. Evans's opinion notes that plaintiff can walk and get on and off the table without difficulty and most ranges of motions are normal, (r. 250), but also notes that plaintiff's chief complaints are that "he has chronic lower back pain and leg pain. He cannot walk very far or bend over. Says that it causes radiating pain to hips and legs. Fatigues quickly." (R. 249.)

This leaves the ALJ relying almost completely on the RFC assessment from the State Disability Determination Service ["DDS"]. It is notable that the ALJ undercuts Dr. Evans's ability to assess plaintiff's condition as being based on only one examination, yet assigns a greater weight to the "conclusions reached by the physicians employed by the [DDS]," who

---

[7](R. 270) (Jan. 18, 2011: "back pain, radiating down legs. . . . Examination of the back reveals paraspinous muscles tenderness in Lumbar area"); (r. 268) (Sept. 21, 2010: "legs get tired when walk. Hurt from buttock down when walk. Back hurts"); (r. 262) (May 27, 2010: "back pain, radiating down thighs. No claudication now"); (r. 195) (Aug. 6, 2009: "back pain, burning down legs when walk long distance"); (r. 199) (pre-onset, April 1, 2009: "complains of severe leg pain bilaterally with his right leg worse than his left") (note, however, that on this occasion plaintiff "denies bone pain or back pain"); (r. 203) (pre-onset, March 6, 2009: "back pain, some better . . . pain back RLE with walking, gets better when stop walking) ("impression: PVD. Degenerative disc"); (r. 205) (pre-onset, Feb. 13, 2009: "back pain; pain above left SI and into both thighs"); (r. 207) (pre-onset, Jan. 30, 2009: "back pain, leg pain, when walk legs give out. When stand legs hurt down sides."); (r. 208) (pre-onset, Aug. 8, 2008: "problem location is back. Aggravated by bending and standing . . . back pain (chronic)").

never examined plaintiff. (R. 31.) "[B]ecause nonexamining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(c)(3). The DDS physician found that plaintiff can stand and/or walk about six hours in an eight-hour workday. (R. 253.) It is surprising, then, to look at the DDS physician's supporting explanations, where he admits that the sources he reviewed note "back pain; burns down leg when walking a long distance" and "limiting claudication w/ inability to walk more than a few feet," (r. 254). The DDS physician finds that plaintiff's symptoms of "difficulty walking long distances, pain, difficult movement" are "not consistent throughout the MER in file" and thus "only partially credible." (R. 257.) The DDS physician appears to have ignored the records cited in footnote seven, *supra*, of this opinion.

The ALJ found that plaintiff could perform "light work," as defined in 20 C.F.R. § 404.1567(b), without additional limitations on walking or standing. (R. 29.) Work is "light" when it involves "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). As shown, the record is replete with the unimpeached claim that plaintiff cannot do "a good deal of walking" due to his impairments. The ALJ did not rely on substantial evidence when he determined that plaintiff could perform light work. Once the ALJ hypothesized that plaintiff could not do light work, the VE opined

that it "would preclude past work or work to which [previously-]acquired [skills or experience] would be transferable." (R. 53.) Therefore, this case is due to be remanded for a proper determination of plaintiff's RFC, a proper finding on plaintiff's credibility, and a finding in step four that is supported by substantial evidence.

In its review of the record, the court notes that not only has the ALJ over-emphasized the impact of plaintiff's daily activities, but there is a serious lack of evidence supporting the ALJ's decision. The ALJ seemingly attempted to support his decision by discrediting plaintiff's evidence, but the ALJ did not do so on adequate grounds, and the remaining evidence upon which his opinion relies was not substantial evidence. Therefore, the decision of the Commissioner is due to be reversed.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be reversed and the case is due to be remanded. An order in accordance will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 28th day of March, 2014.

*Sharon Lovelace Blackburn*
_____
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE